IN THE UNITED STATES DISTR ICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JORGE L. CONCEPCION,                    :
      Plaintiff,                              :
                                              :
      v.                                      :        CIVIL ACTION NO. 21-CV-0274
                                              :
KYLE A. RUSSELL, *et al.*,               :
      Defendants.                             :

MEMORANDUM

BAYLSON, J.                                                          MARCH 4, 2021

Plaintiff Jorge L. Concepcion, a prisoner incarcerated at the Lehigh County Jail ("LCJ")
filed this civil action pursuant to 42 U.S.C. § 1983, challenging the constitutionality of his
conditions of confinement. He also seeks leave to proceed *in forma pauperis*. For the following
reasons, the Court will grant Concepcion leave to proceed *in forma pauperis*, dismiss certain
claims, and permit other claims to proceed.

I.      FACTUAL ALLEGATIONS[1]

The Complaint names as Defendants several officials and employees of the LCJ: (1)
Warden Kyle A. Russell; (2) Deputy Warden MacFadden; (3) Amanda Benner, identified as the
"Medical Director"; (4) Officer Bowlby; (5) Officer Reeves; (6) "Jane Doe Officer G", also
referred to in the Complaint as "Officer G – Jane Doe"; and (7) "John Doe Midnigh[t] Officer."
(ECF No. 2 at 2-3.)[2] The Court understands Concepcion to be bringing claims for deliberate
indifference to medical needs. Specifically, he alleges that he suffers from severe arthritis in

---

[1] The facts set forth in this Memorandum are taken from Concepcion's Complaint and attached
exhibits.

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

both knees, yet was required to "jump on and off a top bunk with no ladder for 3 weeks causing [him] pain [and] suffering" and was made to sleep on a bench or cold floor "for days." (*Id.* at 6.)

It appears that on September 17, 2020, Concepcion was moved to unit 4B and assigned to a top bunk bed. (*Id.* at 13.) The Complaint indicates that there were no ladders Concepcion could use to ascend to the top bunk bed. It appears that "Officer G – Jane Doe" first escorted him to the unit and that Concepcion informed her about his "concern and medical issue." (*Id.* at 9.) He also refused to ascend to the top bunk bed. (*Id.* at 13.) Officer G – Jane Doe allegedly called a "code red" and placed Concepcion in "cuffs," "causing an institutional disturbance and possibility of going to confinement." (*Id.* at 9; *see also id.* at 13.) Concepcion alleges that the code was not necessary. (*Id.* at 9.) It appears the matter was resolved when a Sergeant called the medical department and verified that Concepcion was "on a number of medications including but not limited to pain meds for [his] arthritis in both knees[.]" (*Id.* at 13.) He alleges that Officer G – Jane Doe was responsible for him having to sleep on a bench or the floor and having to deal with the top bunk bed for three weeks. (*Id.*)

Concepcion indicates that he was told he would see a medical professional the next day, but that did not happen. (*Id.*) Officer Bowlby told Concepcion that he would be "seen by medical" on September 25, 2020, but that visit also did not occur. (*Id.* at 8; *see also id.* at 13.) According to Concepcion, upon intake he informed the intake nurse of his health conditions and signed a medical release for records from Saint Luke's Hospital that would have established he suffers from severe arthritis in both knees and was undergoing therapy to avoid double knee surgery, but it is not clear whether the records from the hospital were received at LCJ. (*Id.* at 7 & 13.)

Concepcion alleges that he was made to sleep on the top bunk bed for three weeks, until October 8, 2020.  (*Id.* at 15.)  He also indicates that, at times, he slept on a bench or the floor. When Concepcion tried to use a chair to ascend to or descend from the top bunk bed because there was no ladder for that purpose, Officer Bowlby "would deliberately remove the chair," causing Concepcion to jump down from the top bunk and hurt himself.  (*Id.* at 8.)  Concepcion claims that Officer Reeves was also aware of the situation with the bunk bed because he was a "steady officer" on the unit.  (*Id.*)  Officer Reeves would allegedly tell Concepcion that he "had to go sit by [his] bunkbed" knowing that Concepcion would not be able to get to the top bunk and would instead have to sit on the floor.  (*Id.*)  There were times when Concepcion was able to ascend to the top bunk bed using a chair, but Officer Reeves would then remove the chair.  (*Id.*)

Concepcion alleges that "John Doe – Midnight Officer 4B" likewise would not permit him to access the top bunk bed using a chair even though Concepcion informed the Officer of his medical conditions.  (*Id.* at 9.)  This Defendant also allegedly threatened to write a disciplinary report if Concepcion continued to use the chair, and "harassed" Concepcion during that three-week period.[3]  (*Id.*)

Concepcion alleges that Warden Russell "deliberately violated [his] constitutional rights by allowing his staff to treat [Concepcion] with deliberate indifference and not inquiring about [his] medical condition."  (*Id.* at 6.)  He alleges that Deputy Warden MacFadden's "administration should have known that they are to provide a safe environment not a hostile one"

---

[3] Concepcion also generally alleges that additional John Doe or Jane Does were deliberately indifferent to his medical needs because they knew of those needs and the fact that he sought help, yet he continued to have problems with the top bunk bed.  (*Id.* at 10.)  Concepcion did not identify any additional John or Jane Does in the caption of the Complaint in accordance with Federal Rule of Civil Procedure 10.  In any event, his allegations against these additional John or Jane Doe Defendants are vague and generalized, and thus insufficiently specific to state a claim against them.

and that the Deputy Warden "should have known that bunkbeds without ladders could and would cause harm to someone with [Concepcion's] age and [his] medical conditions." (*Id.* at 7.) Concepcion alleges that Medical Director Benner and her staff "treated [him] with deliberate indifference by ignoring [his] pleas and requests to be seen, so that [he] wouldn't have to endure pain or harm by having to jump up and down from a bunkbed with no ladder." (*Id.*) He also claims they "ignored the fact that [he is] on pain medications for [his] allegations." (*Id.*) It is not clear what Concepcion means by that allegation; Concepcion may be alleging that medical records could have verified his allegations about his knees.

Concepcion filed grievances about the situation with the top bunk bed, at least some of which are attached to his Complaint as exhibits,[4] and claims that his grievances were mishandled. (*Id.* at 5 & 11-20.) Concepcion's initial grievance was denied, apparently because he did not properly complete the form; on appeal, Warden Russell responded that the grievance was properly denied but that the request for the bottom bunk bed was granted.[5] (*Id.* at 17.) Concepcion's grievances suggest that he continues to suffer pain in his knees, some of which he attributes to having had to ascend to the top bunk bed. (*Id.* at 15.) He primarily seeks compensatory damages. (*Id.* at 6.)

---

[4] Some of these grievances appear to be carbon copies of his submissions and are not entirely legible.

[5] The Warden's response indicates that Concepcion was seen by medical on September 25, 2020 and that Concepcion did not request a bottom bunk bed at that time. (ECF No. 2 at 17.) This conflicts with Concepcion's allegation that he was not seen by medical on that date. (*Id.* at 8 & 13.)

## II.    STANDARD OF REVIEW

The Court grants Concepcion leave to proceed *in forma pauperis* because it appears that

he is incapable of paying the fees to commence this civil action.[6]  Accordingly, 28 U.S.C. §

1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a

claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the

same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6),

*see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to

determine whether the complaint contains "sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quotations omitted).  Conclusory allegations do not suffice.  *Id.*  As Concepcion is proceeding

*pro se*, the Court must construe his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339

(3d Cir. 2011).

## III.    DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

For the following reasons, Concepcion has not alleged a plausible basis for a claim against

certain Defendants.

### A.    Claims Based on Grievances

At times, the Complaint could be read to assert claims based on prison officials'

responses to Concepcion's grievances and/or Concepcion's dissatisfaction with the grievance

---

[6] However, as Concepcion is a prisoner, he will be obligated to pay the filing fee in installments
in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

process.  To the extent Concepcion intended to pursue any constitutional claims based on grievances, these claims fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process."  *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam). Accordingly, the facts alleged by Concepcion about grievances do not give rise to a plausible basis for an independent constitutional claim.  As Concepcion cannot cure the defects in these claims, they will be dismissed with prejudice.

### B.    Deliberate Indifference to Medical Needs

The gist of Concepcion's Complaint is that the Defendants were deliberately indifferent to his serious medical needs, namely, arthritis in Concepcion's knees, by assigning him to a top bunk bed for three weeks even though his condition made him incapable of ascending and descending from the top bunk bed without assistance or pain.  He also alleges that some Defendants removed a chair from his cell, knowing that he was using that chair to access the top bunk bed, and that he was made to sleep on the floor at times due to his inability to access the top bunk bed.

Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components.[7]  *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).  To satisfy the objective component, inmates must demonstrate that they are "incarcerated under

---

[7] The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, which the Fourteenth Amendment applies to pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  It appears from the Complaint that Concepcion was a pretrial detainee at the time of the relevant events, (*see* ECF No. 2 at 8), so the Fourteenth Amendment would apply.  Regardless, the analysis of Concepcion's claims is essentially the same under either amendment.

conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and then disregarded that risk." *Id.* In general, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 295, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer*, 511 U.S. at 837); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

To state a claim in the context of medical care, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer*, 511 U.S. at 835. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical

malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Importantly, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Indeed, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

### 1. Jane Doe Officer G

Jane Doe Officer G appears to be the officer who first escorted Concepcion to his top bunk bed. Read liberally, the Complaint alleges that Concepcion informed Jane Doe Officer G about his medical issues and his related concerns about accessing the top bunk bed. It appears that, in response, Jane Doe Officer G called a "code red" and a Sergeant confirmed that Concepcion had arthritis in both knees, but that Jane Doe Officer G still required Concepcion to use the top bunk bed. "'Courts have found that it can be an [a constitutional] violation where an

inmate has a serious medical need requiring him to use the bottom bunk, but prison officials are deliberately indifferent to that need.'" *Saunders v. GEO Grp., Inc.*, Civ. A. No. 19-2322, 2019 WL 5558659, at *4 (E.D. Pa. Oct. 25, 2019) (quoting *Whitehead v. Wetzel*, Civ. A. No. 14-51, 2016 WL 356809, at *7 (W.D. Pa. June 2, 2016); *Wall v. Bushman*, 639 F. App'x 92, 95 (3d Cir. 2015) (reversing grant of summary judgment where disputed issue of material fact existed from which a rational factfinder could conclude that prison doctor recklessly disregarded prisoner's need for a lower-bunk assignment or denied the lower-bunk assignment for non-medical reasons)); *see also Guilfoil v. Pierce*, Civ. A. No. 06-493, 2009 WL 688957, at *5 (D. Del. Mar. 16, 2009) ("Refusal of prison officials to assign an inmate with a herniated disc to a bottom bunk may constitute deliberate indifference if the inmate's condition is sufficiently serious."). Here, Concepcion alleges that he was taking pain medication for severe arthritis in both knees and had undergone therapy to avoid double knee surgery, which pleads a serious medical need. The Complaint suggests that, although Jane Doe Officer G was made aware of Concepcion's condition and the problems it could cause him with regard to the top bunk bed, she left him on the unit with a top bunk assignment. At this stage of the litigation, Concepcion may proceed on his deliberate indifference claim against Jane Doe Officer G.

### 2. Officer Bowlby

Concepcion alleges that Officer Bowlby was aware of his "situation" yet allowed him to continue to endure pain in connection with accessing and descending from the top bunk bed. (ECF No. 2 at 8.) He also alleges that on occasions when he tried using a chair for assistance, Officer Bowlby would remove the chair "causing [Concepcion] to jump down and hurt[] [himself]." (*Id.*) One could infer that Officer Bowlby was aware of Concepcion's medical needs since Concepcion alleges that Officer Bowlby informed him that the would be seen by the

medical department for those needs on September 25, 2020.  Read liberally, one could also infer that Officer Bowlby removed the chair despite awareness of Concepcion's medical needs and the difficulty they presented in ascending to and descending from the top bunk bed.  Accordingly, at this stage of the litigation, Concepcion may proceed on his deliberate indifference claim against Officer Bowlby.

### 3.  Officer Reeves

As with Officer Bowlby, Concepcion alleges that Officer Reeves removed a chair he was using to descend from the top bunk bed.  He also describes conversations with Officer Reeves in which Officer Reeves allegedly told him that he had to sit by his bunk bed, rather than on the metal benches.  However, the Complaint does not plausibly allege that Officer Reeves was aware of Concepcion's arthritis.  Concepcion does not allege that he discussed his medical conditions with Officer Reeves or any other facts suggesting that Officer Reeves had reason to know of his medical condition.  Concepcion alleges that Officer Reeves was "aware of the situation because he is a steady officer on 4B," but that allegation is insufficient because it simply equates Officer Reeves's work assignment with knowledge.  Accordingly, although it is possible that Officer Reeves was aware of Concepcion's conditions, is it not plausible based on the allegations in the Complaint, so Concepcion has not stated a deliberate indifference claim against Officer Reeves. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief." (internal quotations omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

### 4.   John Doe Midnight Officer

Concepcion alleges that "John Doe – Midnight Officer 4B" would not permit him to access the top bunk bed using a chair even though Concepcion informed the Officer of his medical conditions.  (*Id.* at 9.)  This Defendant also allegedly threatened to write a disciplinary report if Concepcion continued to use the chair, and "harassed" Concepcion during that three-week period.[8]  Since Concepcion alleges that he informed this officer of his medical conditions, and that the officer then engaged in actions that made it more difficult for Concepcion to access his bed, he will be permitted to proceed on his deliberate indifference claims against John Doe – Midnight Officer 4B at this time.

### 5.   Medical Director Benner

Concepcion alleges that Medical Director Benner and her staff "treated [him] with deliberate indifference by ignoring [his] pleas and requests to be seen, so that [he] wouldn't have to endure pain or harm by having to jump up and down from a bunkbed with no ladder."  (ECF No. 2 at 7.)  He may also be alleging that they could have or should have obtained medical records from a local hospital that would have verified his medical condition.  These allegations are too unspecific to state a claim against Defendant Benner.  The allegations are asserted against the LCJ medical staff as a whole and are essentially conclusory statements unsupported by facts.  Although the Complaint indicates that Concepcion requested to be seen by the medical department on three occasions (ECF No. 2 at 5), and was scheduled to be seen on two occasions (*id.* at 8 & 13), he does not describe Benner's involvement at all.  For these reasons, it cannot be plausibly inferred that Benner was aware of Concepcion's condition or that she was directly

---

[8] Concepcion's vague allegations of harassment against this officer do not state an independent claim against this Defendant.

responsible — whether through her own actions, a policy for which she was responsible, or her knowledge and acquiescence in subordinates' behavior — for his three-week placement on the top bunk bed and any delay in his placement on a bottom bunk bed.  The Court will therefore dismiss Concepcion's claims against Benner.

### 6.  Warden Russell

Concepcion alleges that Warden Russell "deliberately violated [his] constitutional rights by allowing his staff to treat [Concepcion] with deliberate indifference and not inquiring about [his] medical condition."  (ECF No. 2 at 6.)  Exhibits to the Complaint reflect that Warden Russell responded to Concepcion's appeal of the denial of his grievance on October 13, 2020, to inform him that the initial grievance was properly rejected and that Concepcion's request for a bottom bunk bed had been granted.  (*Id.* at 17.)  The Complaint likewise reflects that Concepcion received a bottom bunk bed on October 8, 2020.  (*Id.* at 15.)

The Complaint fails to state a claim against Warden Russell.  It appears that Concepcion in part seeks to hold Warden Russell liable for the actions of his subordinates, which is not a permissible theory of liability under § 1983.  *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").  Furthermore, allegations that Warden Russell should have inquired into Concepcion's medical condition do not state a plausible deliberate indifference claim because Warden Russell is not a medical professional.  *See Diaz v. Warden Lewisburg USP*, 630 F. App'x 148, 151 (3d Cir. 2015) (per curiam) (prison officials who were administrators and who "are not themselves physicians" were not liable for deliberate indifference where plaintiff could not establish that their "involvement in the matter consisted of anything more than, at most,

receiving letters from Diaz expressing his dissatisfaction with the medical care he was receiving"); *Spruill*, 372 F.3d at 236 ("If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands"); *Durmer  v. O' Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) ("Neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.").  In any event, none of the facts alleged support a plausible basis for a deliberate indifference claim here.  In sum, the Complaint does not plausibly allege that Warden Russell acted with deliberate indifference to Concepcion's medical need for a bottom bunk bed.

### 7.  Deputy Warden MacFadden

Concepcion alleges that Deputy Warden MacFadden's "administration should have known that they are to provide a safe environment not a hostile one" and that the Deputy Warden "should have known that bunkbeds without ladders could and would cause harm to someone with [Concepcion's] age and [his] medical conditions."  (ECF No. 2 at 7.)  That allegation does not state a plausible claim against Deputy Warden MacFadden.  Courts faced with similar claims have held that the general absence of a ladder or other safety mechanism for the top bunk in a prison cell at most suggests negligence and does not give rise to a constitutional claim.  *See Tindell v. City of Philadelphia*, Civ. A. No. 17-907, 2017 WL 3028598, at *2 (E D. Pa. July 14, 2017) (citations omitted).[9]  Additionally, nothing in the Complaint suggests that MacFadden was

---

[9] *See also, e.g.*, *Mikell v. Harry*, Civ. A. No. 16-2254, 2018 WL 501000, at *5 (M.D. Pa. Jan. 22, 2018) ("Courts have held that the absence of a safety mechanism on the top bunk in a prison cell, or the lack of a bunk bed ladder, at most suggests negligence and does not give rise to a constitutional claim as it does not rise to the level of deliberate indifference."); *Vercusky v. Purdue*, Civ. A. No. 15-2461, 2016 WL 7330589, at *3 (M.D. Pa. Dec. 16, 2016) ("This Court

aware of Concepcion's arthritis or responsible for his placement in a top bunk bed despite knowledge of that condition.  Accordingly, Concepcion has not stated a plausible claim against Deputy Warden MacFadden.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Concepcion leave to proceed *in forma pauperis* and dismiss with prejudice any claims based on grievances pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  As for Concepcion's deliberate indifference claims, which comprise the bulk of the Complaint, the Court will dismiss Concepcion's claims against the following Defendants for failure to state a claim:  (1) Warden Kyle A. Russell; (2) Deputy Warden MacFadden; (3) Amanda Benner; and (4) Officer Reeves.  The Court is prepared to direct service of the Complaint on the remaining Defendants so that Concepcion can proceed on his claims against them as they relate to alleged deliberate indifference to his medical needs in connection with the three-week period during which he was assigned to the top bunk bed.  However, the Court will

---

similarly concludes that Plaintiffs allegation that the prison Warden failed to install ladders for access to the top bunks in the SHU at FCI-Schuylkill does not amount to a cognizable constitutional violation."); *Tutora v. Sweeney*, Civ. A. No. 14-4458, 2014 WL 7059086, at *2 (E.D. Pa. Dec. 15, 2014) ("[T]he absence of a ladder or railing from the top bunk does not create an objectively serious condition threatening inmate safety or reflect deliberate indifference on behalf of prison officials."); *Williams v. Corizon*, Civ. A. No. 12-2412, 2013 WL 4787223, at *15 (E.D. Pa. Sept. 9, 2013) ("To the extent that Plaintiff attempts to argue that Defendant City of Philadelphia is liable because they did not have ladders for all the bunk beds, such argument fails, since that is, at most, negligence, which does not demonstrate the requisite culpability for liability to attach."); *Walker v. Walsh*, Civ. A. No. 11-1750, 2012 WL 314883, at *5 (M.D. Pa. Feb. 1, 2012) ("[F]ailing to install safety rails on an upper bunk of a set of bunk beds that is to be exclusively utilized by adults does not constitute a condition which would pose an unreasonable risk of future injury." (internal quotation marks omitted)); *Pumphrey v. Smith*, Civ. A. No. 09-233, 2010 WL 4983675, at *4 (W.D. Pa. Dec. 2, 2010) ("The lack of a bunk ladder in a prison cell does not meet the stringent requirements of deliberate indifference."); *see also Franco-Calzada v. United States*, 375 F. App'x 217, 218-19 (3d Cir. 2010) (per curiam) (dismissing appeal as frivolous when plaintiff's constitutional claims rested on allegations that he fell from a faulty ladder attached to his top bunk, which defendants knew or should have known to be unsafe because at least two other inmates had fallen).

first give Concepcion an opportunity to file an amended complaint in the event he seeks to

amend his dismissed deliberate indifference claims.  If he chooses not to file an amended

complaint, the Court will direct service only on Defendants Officer Bowlby, Jane Doe Officer G,

and John Doe Midnight Officer.[10]  An appropriate Order follows, which provides further

information about options for proceeding in this case.

BY THE COURT:

s/ Michael M. Baylson

_____

**MICHAEL M. BAYLSON, J.**

---

[10] The Court is aware that although Concepcion is entitled to service by the United States
Marshals Service, *see* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3), it is highly unlikely the
Marshals Service could properly serve the Summonses and Complaint without more precise
identifying information for these individuals such as last name, first name, rank, physical
description, etc.  Therefore, if Concepcion opts to proceed on these claims, the Court will
consider adopting the approach taken by the Second Circuit Court of Appeals in *Davis v. Kelly*,
160 F.3d 917 (2d Cir. 1998) to facilitate service.  In *Davis*, the Second Circuit recognized that
under certain circumstances a court should not dismiss otherwise colorable § 1983 claims against
supervisory personnel, who are not alleged to otherwise have personal involvement, until a *pro
se* plaintiff has been afforded an opportunity, at least through limited discovery, to identify the
subordinate officials who have personal liability.  *Id.* at 920-21 (observing that "courts have
pointed out the appropriateness of maintaining supervisory personnel as defendants in lawsuits
stating a colorable claim until the plaintiff has been afforded an opportunity through at least brief
discovery to identify the subordinate officials who have personal liability").