IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JORGE L. CONCEPCION,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    CIVL ACTION NO. 21-CV-0274 |
| KYLE A. RUSSELL, *et al.*,<br>    Defendants. | :<br>:<br>: |

MEMORANDUM

**BAYLSON, J.**                                                                                                                                        APRIL 20, 2021

        Currently before the Court is an Amended Complaint filed by Plaintiff Jorge L. Concepcion, a pretrial detainee incarcerated at the Lehigh County Jail ("LCJ"). Concepcion brings his Amended Complaint pursuant to 42 U.S.C. § 1983, and challenges conditions in which he was recently confined at LCJ. For the following reasons, the Court will dismiss certain of Concepcion's claims, and permit other claims to proceed.

**I.**         **FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**

        Concepcion's initial Complaint named the following officials and employees of the LCJ as Defendants: (1) Warden Kyle A. Russell; (2) Deputy Warden McFadden;[1] (3) Amanda Benner, identified as the "Medical Director"; (4) Officer Bowlby; (5) Officer Reeves; (6) "Jane Doe Officer G", also referred to in the Complaint as "Officer G – Jane Doe"; and (7) "John Doe Midnigh[t] Officer." (ECF No. 2 at 2-3.)[2] The gist of his Complaint was that the Defendants were deliberately indifferent to his serious medical needs for a three-week period during which

---

[1] Concepcion spelled this Defendant's name as "MacFadden" in the initial Complaint, but as "McFadden" in the Amended Complaint. The Court will adopt the spelling used in the Amended Complaint.

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

he was required to ascend to and descend from a top bunk bed without a ladder even though he suffers from severe arthritis in both of his knees.

The Court granted Concepcion leave to proceed *in forma pauperis* and, upon screening his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), determined that Concepcion failed to state a claim as to certain Defendants but could proceed as to other Defendants. *See Concepcion v. Russell*, Civ. A. No. 21-0274, 2021 WL 826301, at *1 (E.D. Pa. Mar. 4, 2021). The Court concluded that Concepcion failed to state a constitutional claim based on prison officials' responses to or handling of his grievances. *Id.* at *3. The Court also concluded that Concepcion failed to state a claim against Deputy Warden McFadden, since the only allegation against him was that McFadden should have known that the failure to provide ladders for top bunk beds was unsafe. *Id.* at *6 ("Courts faced with similar claims have held that the general absence of a ladder or other safety mechanism for the top bunk in a prison cell at most suggests negligence and does not give rise to a constitutional claim."). Concepcion's initial Complaint also failed to state a claim against Defendants Russell, Benner, and Reeves, but the Court permitted his allegations against the remaining Defendants — Jane Doe Officer G, Officer Bowlby and John Doe Midnight Officer — to proceed. *Id.* at *4-*6. However, the Court delayed service to give Concepcion an opportunity to file an amended complaint as to his dismissed claims. *Id.* at *7.

Concepcion returned with his Amended Complaint, which names the same Defendants as the initial Complaint, although "Jane Doe Officer G" has now been identified as Correctional Officer Gotling and Concepcion indicates that he is naming the Defendants in their individual and official capacities. (ECF No. 10.) As with his initial Complaint, Concepcion brings claims for deliberate indifference to his serious medical needs stemming from the three-week period during which he was made to use a top bunk bed without a ladder despite suffering from severe

arthritis in his knees.  There were times during this period when Concepcion was made to sleep on a cold metal bench or the cold floor because he could not access his bed.  It appears this three-week period began on September 17, 2020, when Concepcion was placed on Unit 4B at LCJ.  (*Id.* at 3.)

Concepcion alleges that Defendant Warden Russell "knew" that Concepcion could not access the top bunk bed because of his arthritis because Concepcion "placed [Russell] on notice via grievance and or appeal addressed to him." (*Id.* at 4.)  Concepcion alleges that, despite this grievance or appeal, Russell failed to intervene or protect him. (*Id.*)  Concepcion also alleges that Russell "should have known that bunkbeds without safety and or security mechanisms" would be unsafe to inmates generally and to Concepcion specifically because of his medical condition. (*Id.*)

Similarly, Concepcion alleges that Defendant McFadden, as deputy warden of security, "should have known that bunkbeds without ladders could result in cruel & unusual punishment for someone who is diagnosed with arthritis." (*Id.* at 10.)  Concepcion alleges that McFadden approved the use of bunkbeds without ladders for detainees housed in the gymnasium. (*Id.*)  He also alleges that McFadden was "placed on notice about the breach of security concerning the bunkbeds when [Concepcion] stipulated [his] medical condition and the threat that it inferred and or that it imposed in [his] grievance, requests and or appeals." (*Id.*)

Concepcion alleges that Defendant Benner "knew or should have known of [his] pleas and or complaints because she is the director of medical." (*Id.* at 5.)  Additionally, as the basis for his claims against Benner, Concepcion appears to be alleging that he had signed paperwork authorizing the transfer of records from St. Luke's Hospital that would have documented his

diagnosis of severe arthritis in his knees, but the medical staff failed to follow up. (*Id.*) Concepcion implies that this failure may have led to his placement on a top bunk bed. (*Id.*)

Defendant Gotling is the officer who brought Concepcion to the 4B housing unit. (*Id.* at 7.) Concepcion alleges that upon arriving, he informed Gotling that he suffered from severe arthritis in both knees and that it was "impossible for [him] to climb up to the top bunkbed without a ladder and without causing further harm or injury to an already existing medical issue." (*Id.*) In response, Gotling allegedly "called an emergency response code" and placed Concepcion in handcuffs, which he describes as "an unnecessary institutional disturbance and the possibility of [him] going to confinement." (*Id.*) Concepcion alleges that the Sergeant on duty confirmed he was on pain medications and other medications, but that Gotling ordered him to go to his assigned top bunkbed regardless. (*Id.*)

Concepcion's allegations against the remaining Defendants — Reeves, Bowlby, and "John Doe – Midnight CO"— are similar in nature. He alleges that he had a conversation with Reeves about possible reassignment to a bottom bunk bed in light of his diagnosis. (*Id.* at 6.) He also alleges that Reeves would order him to sit by his bed, so he would end up on the cold floor because he was scared to ascend to the top bunk under the circumstances. (*Id.*) He adds that, at times, Reeves would permit him to use a chair to access the top bunk, but would then remove the chair, suggesting that Concepcion lacked a means of descending from the top bunk given his medical condition. (*Id.*) Concepcion similarly alleges that he had discussions with Bowlby about his arthritis and the difficulties he experienced accessing the top bunk bed, and that Bowlby would allow him to use a chair to ascend but would then remove the chair, forcing him to jump down and fall or cause injury to himself. (*Id.* at 8.) Likewise, Concepcion allegedly discussed his severe arthritis with "John Doe – Midnight CO" but that Defendant would not

allow Concepcion to use a chair to access the top bunk and threatened Concepcion with disciplinary action if he did so; Concepcion also alleges that this Defendant would remove the chair if Concepcion had used it to ascend to the top bunk. (*Id.* at 9.)

Based on these allegations, Concepcion primarily seeks damages for deliberate indifference to his serious medical needs. (*Id.* at 11.)

## II. STANDARD OF REVIEW

As Concepcion is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). The Court must "accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff," but disregard "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" in determining whether a plaintiff has stated a claim. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*, 908 F.3d 872, 878 (3d Cir. 2018) (quotations omitted). In other words, conclusory allegations do not suffice to state a claim. *Iqbal*, 556 U.S. at 678. As Concepcion is proceeding *pro se*, the Court must construe his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, Concepcion has not alleged a plausible basis for a claim against certain Defendants.

### A.     Official Capacity Claims

Concepcion has sued the Defendants in their official capacities as well as their individual capacities. Official capacity claims are indistinguishable from claims against the entity that employs the officials. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, n. 55 (1978)). Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Accordingly, Concepcion's official capacity claims against employees and officials of LCJ are essentially claims against the employing municipality, Lehigh County.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, the

Defendant must have "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." *Id.* (internal quotations and alterations omitted). A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

Nothing in the Amended Complaint alleges that the conditions or conduct of which Concepcion complains was the result of a municipal policy or custom. Accordingly, Concepcion has failed to state plausible official capacity claims against the Defendants.

### B.  Claims Based on Absence of Ladders

Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components.[3] *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). To satisfy the objective component, inmates must demonstrate that they are "incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and then disregarded that risk." *Id.* In general, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 295, 298-99 (1991); *see also Wilson v. Burks*, 423 F.

---

[3] Since Concepcion was a pretrial detainee at the time of relevant events, the Fourteenth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

App'x 169, 173 (3d Cir. 2011) (per curiam) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer*, 511 U.S. at 837); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

Although the thrust of Concepcion's Amended Complaint are his claims for deliberate indifference to medical needs, he also appears be asserting constitutional claims based on the general absence of ladders from the top bunk beds, in particular against Defendants Warden Russell and Deputy Warden McFadden. However, as previously explained to Concepcion, *see Concepcion v. Russell*, 2021 WL 826301, at *6, courts faced with similar claims have held that the general absence of a ladder or other safety mechanism for the top bunk in a prison cell at most suggests negligence and does not give rise to a constitutional claim. *See Tindell v. City of Philadelphia*, Civ. A. No. 17-907, 2017 WL 3028598, at *2 (E D. Pa. July 14, 2017) (citations omitted).[4] Accordingly, Concepcion cannot state a claim based on the fact that Deputy Warden

---

[4] *See also, e.g.*, *Mikell v. Harry*, Civ. A. No. 16-2254, 2018 WL 501000, at *5 (M.D. Pa. Jan. 22, 2018) ("Courts have held that the absence of a safety mechanism on the top bunk in a prison cell, or the lack of a bunk bed ladder, at most suggests negligence and does not give rise to a constitutional claim as it does not rise to the level of deliberate indifference."); *Vercusky v. Purdue*, Civ. A. No. 15-2461, 2016 WL 7330589, at *3 (M.D. Pa. Dec. 16, 2016) ("This Court similarly concludes that Plaintiffs allegation that the prison Warden failed to install ladders for access to the top bunks in the SHU at FCI-Schuylkill does not amount to a cognizable constitutional violation."); *Tutora v. Sweeney*, Civ. A. No. 14-4458, 2014 WL 7059086, at *2 (E.D. Pa. Dec. 15, 2014) ("[T]he absence of a ladder or railing from the top bunk does not create an objectively serious condition threatening inmate safety or reflect deliberate indifference on behalf of prison officials."); *Williams v. Corizon*, Civ. A. No. 12-2412, 2013 WL 4787223, at *15 (E.D. Pa. Sept. 9, 2013) ("To the extent that Plaintiff attempts to argue that Defendant City of Philadelphia is liable because they did not have ladders for all the bunk beds, such argument fails, since that is, at most, negligence, which does not demonstrate the requisite culpability for liability to attach."); *Walker v. Walsh*, Civ. A. No. 11-1750, 2012 WL 314883, at *5 (M.D. Pa.

McFadden approved the use of top bunk beds without ladders or based on the general absence of ladders from the top bunk beds.

### C. Deliberate Indifference to Medical Needs

Concepcion also alleges that the Defendants were deliberately indifferent to his serious medical needs, namely, severe arthritis in his knees, by assigning him to a top bunk bed for three weeks even though his condition made him incapable of ascending and descending from the top bunk bed without assistance or pain. He also alleges that some Defendants removed a chair from his cell, knowing that he was using the chair to access the top bunk bed, and that at times he was made to sleep on the cold floor or a metal bench due to his inability to access the top bunk bed.

To state a claim in the context of medical care, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer*, 511 U.S. at 835. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical

---

Feb. 1, 2012) ("[F]ailing to install safety rails on an upper bunk of a set of bunk beds that is to be exclusively utilized by adults does not constitute a condition which would pose an unreasonable risk of future injury." (internal quotation marks omitted)); *Pumphrey v. Smith*, Civ. A. No. 09-233, 2010 WL 4983675, at *4 (W.D. Pa. Dec. 2, 2010) ("The lack of a bunk ladder in a prison cell does not meet the stringent requirements of deliberate indifference."); *see also Franco-Calzada v. United States*, 375 F. App'x 217, 218-19 (3d Cir. 2010) (per curiam) (dismissing appeal as frivolous when plaintiff's constitutional claims rested on allegations that he fell from a faulty ladder attached to his top bunk, which defendants knew or should have known to be unsafe because at least two other inmates had fallen).

treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

"'Courts have found that it can be an [a constitutional] violation where an inmate has a serious medical need requiring him to use the bottom bunk, but prison officials are deliberately indifferent to that need.'" *Saunders v. GEO Grp., Inc.*, Civ. A. No. 19-2322, 2019 WL 5558659, at *4 (E.D. Pa. Oct. 25, 2019) (quoting *Whitehead v. Wetzel*, Civ. A. No. 14-51, 2016 WL 356809, at *7 (W.D. Pa. June 2, 2016); *Wall v. Bushman*, 639 F. App'x 92, 95 (3d Cir. 2015) (reversing grant of summary judgment where disputed issue of material fact existed from which a rational factfinder could conclude that prison doctor recklessly disregarded prisoner's need for a lower-bunk assignment or denied the lower-bunk assignment for non-medical reasons)); *see also Guilfoil v. Pierce*, Civ. A. No. 06-493, 2009 WL 688957, at *5 (D. Del. Mar. 16, 2009) ("Refusal of prison officials to assign an inmate with a herniated disc to a bottom bunk may constitute deliberate indifference if the inmate's condition is sufficiently serious."). However, to be liable, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or

custom which directly caused [the] constitutional harm." *Id*. (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr*., 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id*.

### 1. Officer Gotling

Concepcion alleges that he informed Officer Gotling, the officer who escorted him to his assigned top bunk bed on unit 4B, that he could not access the top bunk bed because he suffered from severe arthritis in his knees and that Gotling responded by causing "an unnecessary institutional disturbance" and ultimately directing him to his top bunk assignment even though a Sergeant confirmed he was on various medications. Concepcion alleges that he was taking pain medication for severe arthritis in both knees and had undergone therapy to avoid double knee surgery, which pleads a serious medical need. The Amended Complaint suggests that, although Officer Gotling was made aware of Concepcion's condition and the problems it could cause him with regard to the top bunk bed, she left him on the unit with a top bunk assignment. At this stage of the litigation, Concepcion may proceed on his deliberate indifference claim against Officer Gotling.[5]

### 2. Officers Reeves, Bowlby and "John Doe – Midnight CO"

Concepcion's claims against Officers Reeves, Bowlby, and "John Doe – Midnight CO" are similar in nature. He alleges that he discussed with each of these Defendants his arthritis and

---

[5] To the extent Concepcion intended to bring an independent claim against Officer Gotling based on her handcuffing him and calling a code, which Concepcion alleges was unnecessary, he has not stated a plausible claim for unconstitutional punishment because he has not alleged any objectively serious deprivation.

how it affected his ability to access the top bunk bed, but that during the three-week period Concepcion was assigned to the top bunk bed, these officers removed a chair he was using to access the bed, causing him to have to sleep on the floor or a bench and causing him pain when he attempted to ascend or descend. Read liberally and in a light most favorable to Concepcion, he has alleged that these Defendants were aware of his medical condition but did nothing about it and, instead, made it more difficult for him to access his bed. Accordingly, at this stage of the litigation, Concepcion may proceed on his deliberate indifference claims against Officers Reeves, Bowlby, and "John Doe – Midnight CO".

### 3. Medical Director Benner

The basis for Concepcion's claims against Defendant Benner is essentially that she "knew or should have known" of the complaints he filed to address the situation because she is the medical director at LCJ and that, because of her position, she is responsible for the failure of her staff to obtain medical records that would have documented his arthritis. (ECF No. 10 at 5.) Notably, nothing in the Amended Complaint supports an inference that Benner was actually aware of Concepcion's medical condition or his top bunk assignment. Rather, the Amended Complaint seeks to hold Benner liable for the failure of her subordinates, which is not a permissible basis for establishing liability under § 1983. The Court will therefore dismiss Concepcion's claims against Benner because he has not plausibly alleged that she was deliberately indifferent to his serious medical needs.

### 4. Warden Russell and Deputy Warden McFadden

Concepcion's deliberate indifference claim against Defendant Russell is based on Concepcion's allegation that Russell knew of his condition because he "placed [Russell] on

notice via grievance and or appeal addressed to him" about the situation with the top bunk bed.[6] (ECF No. 10 at 4.) Concepcion's deliberate indifference claim against McFadden is premised on his unclear allegation that McFadden was "placed on notice about the breach of security concerning the bunkbeds when [Concepcion] stipulated [his] medical condition and the threat that it inferred and or that it imposed in [his] grievance, requests and or appeals." (*Id.* at 10.). However, high-level officials' review of a prisoner's grievance or appeal, without more, is not sufficient personal involvement for liability under § 1983. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (claims based on "review and denial of [plaintiff's] grievance" were appropriately dismissed for failure to state a claim); *Diaz v. Warden Lewisburg USP*, 630 F. App'x 148, 151 (3d Cir. 2015) (per curiam) (prison officials who were administrators and who "are not themselves physicians" were not liable for deliberate indifference where plaintiff could not establish that their "involvement in the matter consisted of anything more than, at most, receiving letters from Diaz expressing his dissatisfaction with the medical care he was receiving"); *Rode*, 845 F.2d at 1208 (administrative review of a grievance does not rise to the level of personal involvement necessary to state a 1983 claim). In any event, Concepcion's allegations against these Defendants are too vague and non-specific to support a plausible inference of deliberate indifference, and Concepcion does not allege the involvement of these

---

[6] Exhibits to Concepcion's initial Complaint reflected that on October 13, 2020, Warden Russell responded to Concepcion's appeal of the denial of one of his grievances to inform him that the initial grievance was properly rejected and that Concepcion's request for a bottom bunk bed had been granted. *Concepcion*, 2021 WL 826301, at *6. The Complaint likewise reflected that Concepcion received a bottom bunk bed on October 8, 2020. *Id.* It is unclear if this is the response that forms the basis for Concepcion's claim in his Amended Complaint. If so, it is unclear how this incident supports a deliberate indifference claim since it reflects that, although Russell denied the appeal of the grievance, the request for a bottom bunk was previously granted.

13

Defendants beyond these vague allegations. Accordingly, Concepcion has not stated a claim against Defendants Russell or McFadden for deliberate indifference to his medical needs.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss the following claims with prejudice, because Concepcion was unable to amend these claims despite having been given leave to do so: (1) all claims based on the general absence of ladders from top bunk beds; (2) all claims against Defendant Benner; (3) all claims against Defendant Russell; and (4) all claims against Defendant McFadden. Concepcion's official capacity claims will also be dismissed for failure to state a claim. The Court will direct service of Amended Complaint on the remaining Defendants — Officers Gotling, Reeves, Bowlby, and "John Doe – Midnight CO" — so that Concepcion can proceed against them on his claims that these Defendants were deliberately indifferent to his serious medical needs during the three-week period when he was assigned to the top bunk bed.[7] An appropriate Order follows, which directs service of Concepcion's remaining claims.

---

[7] The Court is aware that although Concepcion is entitled to service by Court or the United States Marshals Service, *see* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3), it is unlikely these Defendants can be served without more precise identifying information for these individuals. Therefore, the Court is inclined to adopt the approach taken by the Second Circuit Court of Appeals in *Davis v. Kelly*, 160 F.3d 917 (2d Cir. 1998) to facilitate service.

In *Davis*, the Second Circuit recognized that under certain circumstances a court should not dismiss otherwise colorable § 1983 claims against supervisory personnel, who are not alleged to otherwise have personal involvement, until a *pro se* plaintiff has been afforded an opportunity, at least through limited discovery, to identify the subordinate officials who have personal liability. *Id.* at 920-21 (observing that "courts have pointed out the appropriateness of maintaining supervisory personnel as defendants in lawsuits stating a colorable claim until the plaintiff has been afforded an opportunity through at least brief discovery to identify the subordinate officials who have personal liability"). Accordingly, the Court will not terminate Warden Russell as a Defendant at this time for the limited and sole purpose of allowing service of the Summonses and the Amended Complaint, along with a copy of this Memorandum and its accompanying Order, so that LCJ may assist Concepcion in identifying the remaining Defendants if initial efforts at service are ineffective. At such time that Concepcion is able to identify these the unnamed Defendants, the Court will dismiss Warden Russell from this case as a Defendant. Should Concepcion still be unable to identify these Defendants after reasonable

BY THE COURT:

s/ MICHAEL M. BAYLSON

———————————————
MICHAEL M. BAYLSON, J.

O:\CIVIL 21\21-274 Concepcion\21-274 Concepcion partial dismiss.docx

---

efforts and assistance, the Court will entertain whatever motions for relief Warden Russell seeks to bring.